UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM DAVID NAGY,

                Plaintiff,                Civil Action No. 16-10661
                                              Honorable David M. Lawson
v.                                                      Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]

Plaintiff William David Nagy ("Nagy") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 13], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Nagy is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [13] be DENIED, Nagy's Motion for Summary Judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On March 9, 2011, Nagy filed an application for DIB, alleging a disability onset date of December 25, 2010. (Tr. 202-03). This application was denied initially on July 21, 2011. (Tr. 101-04). Nagy filed a timely request for an administrative hearing, which was held on April 2, 2012, before ALJ Oksana Xenos. (Tr. 50-67). On April 17, 2012, ALJ Xenos issued a written decision denying that application. (Tr. 83-91). On August 27, 2013, the Appeals Council issued an order remanding the case to the ALJ with various instructions. (Tr. 97-99). ALJ Xenos held a second hearing on February 24, 2014 (Tr. 28-49), and issued a second written decision, on March 14, 2014, again denying Nagy's application for DIB (Tr. 13-22). On December 31, 2015, the Appeals Council denied review. (Tr. 1-5). Nagy timely filed for judicial review of the final decision on February 23, 2016. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**    **Background**

        *1.*    *Nagy's Reports and Testimony*

In a disability report, Nagy, who was born in 1967, indicated that he is 5'7" tall and weighs 233 pounds.  (Tr. 232, 257).  He lives in a house with his wife and two daughters.  (Tr. 32, 54, 241).  He completed the tenth grade but had no further education.  (Tr. 54, 233). Previously, he worked as a kiln operator for more than twenty years, even after having fusion surgery on his back in 2009.  (Tr. 61, 233).  He stopped working on December 25, 2010, however, when he slipped and fell at home and reinjured his back.  (Tr. 61, 232).

Nagy alleges disability as a result of back and hip pain, asthma, chronic obstructive pulmonary disease, and depression.  (Tr. 232).  In a function report, he indicated that the pain in his back and hip is so bad that he can hardly walk and has difficulty bending and picking up

3

objects. (Tr. 241). At the time of the 2012 hearing, he had been using a cane for approximately eighteen months.[1] (Tr. 54). At the 2014 hearing, Nagy, who was still using a cane, testified that he cannot lift, twist, push or pull, or climb steps. (Tr. 33-34). He testified that he had a spinal stimulator implanted in 2012, saying he uses it "24/7." (Tr. 38-39). He further testified that this device helps with his pain by "mak[ing] life bearable," but does not eliminate the pain. (Tr. 39, 41). At that time, in 2014, his doctor was recommending another surgery, but he did not have insurance. (Tr. 37).

Nagy spends most of his days watching television and sleeping. (Tr. 35, 57, 242). He has difficulty with personal care (such as putting on socks, bathing, and using the toilet). (Tr. 242). He is able to prepare simple meal a "couple times a week," such as sandwiches or meals his wife has prepared ahead of time for him to microwave. (Tr. 37, 243). He is able to clear off the table and load the dishwasher but cannot vacuum or mow the lawn. (Tr. 243-44). He testified that he is able to drive but only drives his wife to and from work (one mile away). (Tr. 35, 57). He has difficulty sleeping and frequently wakes at night due to pain. (Tr. 35, 64, 242). He can walk only 1/2 block, stand for 10-15 minutes at a time, sit for 15 minutes at a time, and lift only 1/2 gallon of milk. (Tr. 34, 55, 58, 246).

   2.   *Medical Evidence[2]*

In June of 2009, prior to the alleged onset of disability, Nagy underwent lumbar decompression fusion surgery, after which he returned to work. On December 25, 2010, Nagy presented to the emergency room with complaints of back pain after he slipped and fell in his kitchen. (Tr. 311). X-rays were negative, and he was prescribed pain medication. (Tr. 311-16,

---

[1] When asked if the cane had been prescribed by a physician, Nagy testified that his doctor had actually prescribed a walker, but he could not afford one, so he used a cane instead. (Tr. 54).

[2] Because the Court is recommending remand based on the ALJ's evaluation of Nagy's back impairment, it will focus its discussion on medical evidence pertaining to this condition.

4

350). A couple of days later, he followed up with his surgeon, Lance Chaldecott, M.D., who ordered a lumbar spine MRI. (Tr. 371). That MRI indicated a disc protrusion at L5-S1 abutting the left S1 nerve root, as well as severe facet hypertrophy on the right at L4-L5 and mild facet disease at the remaining levels. (Tr. 349).

In early 2011, at Dr. Chaldecott's recommendation, Nagy remained off work and began physical therapy, which unfortunately only served to exacerbate his pain. (Tr. 356-67, 369-70). As a result, Dr. Chaldecott referred Nagy to Eric Kovan of Rehabilitation Physicians for a series of epidural steroid injections. (Tr. 367-68). Dr. Kovan noted that Nagy had an antalgic gait and a positive straight leg raise test on the left and scheduled him for transforaminal epidural injections. (Tr. 375). At his next visit, however, on March 21, 2011, Dr. Kovan noted that Nagy's pain had worsened after the first injection and was now radiating down his right leg, so he referred Nagy for a surgical evaluation with Peter Bono, D.O. (Tr. 374).

Nagy saw Dr. Bono on March 22, 2011, and a CT scan of his lumbar spine was ordered. (Tr. 415). This showed spinal stenosis at L4-L5 caused by disc bulging, facet arthropathy, and ligamentous hypertrophy. (Tr. 376). Nagy returned to see Dr. Bono on April 5, 2011, reporting an "80% improvement in his left SI joint pain" following an injection he had received four days earlier. (Tr. 414). Dr. Bono viewed him as a candidate for an SI joint repair and therefore referred him to Robert Colen, D.O. (*Id.*).

On April 20, 2011, Nagy saw Dr. Colen, who recommended in situ fixation to the left SI joint, which was performed at Botsford Hospital on May 6, 2011. (Tr. 423-24, 438). At a postoperative visit on May 18, 2011, Nagi told Dr. Colen that he was "starting to feel less pain"; a couple of weeks later, however, on June 14, 2011, he presented to the emergency room with complaints of left hip pain. (Tr. 428, 439). He was sent for an MRI of the lumbar spine, which

5

showed a left paracentral disc protrusion at L5-S1 contacting the left S1 nerve root. (Tr. 453-54). At follow-up visits in 2011, Dr. Colen expressed a belief that Nagy's left lower extremity pain was either caused by irritation from the screws (which he felt unlikely) or was due to a disc herniation. (Tr. 441-42, 507-08). Thus, he referred Nagy back to Dr. Bono, the spine surgeon. (Tr. 442).

Nagy followed up with Dr. Bono, who felt he might benefit from a spinal cord stimulator, as he was still experiencing radiating pain into his leg and had a positive straight leg raise test on the left. (Tr. 468). At a June 13, 2011 consultation with Dominick Lago, M.D. at Michigan Pain Management Consultants, Nagy reported that his symptoms were "getting progressively worse" and included numbness, tingling, and weakness in the left lower extremity. (Tr. 525). On examination, he had an antalgic gait, decreased range of motion of the lumbar spine, and tenderness to palpation. (Tr. 526).

At a follow-up visit to Dr. Colen in September of 2011, Nagy indicated that he did not think the in situ fixation procedure had offered him much relief and inquired about the possibility of removing the screws. (Tr. 505-06). On October 14, 2011, surgery was performed to remove the hardware in Nagy's pelvis. (Tr. 481-83).

During this period of time, Dr. Kovan completed a Medical Source Statement dated October 4, 2011, on which he opined that due to his herniated disc and other back ailments, Nagy would be limited to lifting 20 pounds occasionally and less than 10 pounds frequently. (Tr. 473). Dr. Kovan further opined that Nagy would be limited to standing/walking less than 2 hours in an 8-hour work day and sitting less than 6 hours in an 8-hour work day, and therefore would be incapable of working a full 8-hour workday. (Tr. 473-74). In addition, Dr. Kovan opined that Nagy would have limitations in pushing or pulling with the upper and lower extremities; should

never climb, balance, kneel, crouch, crawl, or stoop; should only occasionally reach; and should not work in environments involving temperature extremes, dust, vibration, humidity/wetness, hazards, or fumes/odors/chemicals/gases. (Tr. 474-76).

On April 3, 2012, after testing was completed to ensure he was a viable candidate for the procedure, Nagy underwent the spinal stimulator implant. (Tr. 532). At a follow up visit to the pain clinic two days later, Nagy reported "an 80-85% improvement in his pain." (Tr. 531). At his next visit, however, on May 7, 2012, Nagy reported ongoing pain (8/10 on the pain scale), which was aggravated with bending. (Tr. 530). On May 24, 2012, Nagy reported "50 to 60% relief" from the spinal cord stimulator. (Tr. 529). By the time of his next visit, however, on July 23, 2012, Nagy reported that the stimulator was "not controlling his pain as it [had] been in the past" and he was also experiencing numbness, tingling, and weakness. (Tr. 528). Dr. Kovan continued to prescribe Vicodin and Valium for his ongoing back pain. (Tr. 600-01).

### 3. *Vocational Expert's Testimony*

Don Harrison testified as an independent vocational expert ("VE") at the 2014 hearing. (Tr. 45-48). The ALJ asked the VE to imagine a claimant of Nagy's age, education, and work experience, who could perform sedentary work with the following additional limitations: must have the option to sit/stand at will; no climbing of ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; only simple, routine work with only minimal changes in the work setting; only occasional contact with the general public; no exposure to concentrated fumes, odors, noxious gases, dusts, or chemicals; no exposure to hazards such as unprotected heights and moving machinery; and requires a cane to ambulate more than ten yards. (Tr. 46-47). The VE testified that the hypothetical individual would be capable of performing the jobs of bench assembler (35,000 jobs

nationally), optical inspector (50,000 jobs), and surveillance monitor (65,000 jobs). (Tr. 46-47).

**D.    The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Nagy is not disabled under the Act. At Step One, the ALJ found that he has not engaged in substantial gainful activity since December 25, 2010 (the alleged onset date). (Tr. 15). At Step Two, the ALJ found that he has the severe impairments of lumbar spine radiculopathy, a protruded lumbar spine disc, bulging lumbar spine discs, chronic obstructive pulmonary disease, diabetes, and major depression. (Tr. 16). At Step Three, the ALJ found that Nagy's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Nagy's RFC, concluding that he is capable of performing sedentary work with the following additional limitations: must have the option to sit/stand at will; no climbing of ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; only simple, routine work with only minimal changes in the work setting; only occasional contact with the general public; no exposure to concentrated fumes, odors, noxious gases, dusts, or chemicals; no exposure to hazards such as unprotected heights and moving machinery; and requires a cane to ambulate more than ten yards. (Tr. 18).

At Step Four, the ALJ determined that Nagy is unable to perform his past relevant work. (Tr. 20). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Nagy is capable of performing a significant number of jobs that exist in the national economy. (Tr. 21). As a result, the ALJ concluded that Nagy is not disabled under the Act. (Tr. 22).

**E.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In his motion for summary judgment, Nagy argues that the ALJ erred by (1) failing to properly apply the "treating physician rule" in discounting Dr. Kovan's October 4, 2011 opinion; and (2) discounting his credibility for reasons unsupported by the record evidence.[3] (Doc. #11 at 6-9). Each of these arguments will be addressed in turn.

*1.     The ALJ Erred in Evaluating Nagy's Treating Physician's Opinion*

Nagy first argues that the ALJ failed to properly apply the treating physician rule. Under the applicable regulations, an ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R.

---

[3] Nagy also argues that the ALJ erred in failing to properly consider how his obesity, in combination with his other impairments, impacted his functioning, particularly in terms of causing additional pain and fatigue. (Doc. #11 at 8). Because the Court is recommending remand on other grounds, it need not consider the merits of this argument in detail. On remand, however, the ALJ should fully evaluate the combined effects of all of Nagy's impairments, including his obesity.

§404.1527(d)(2)). If an ALJ declines to give a treating physician's opinion controlling weight, she must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. §404.1527(d)(2). In addition, and particularly relevant here, the treating physician rule contains a procedural, explanatory requirement that an ALJ give "good reasons" for the weight given a treating source opinion. *See Wilson v. Comm'r of Soc. Sec.*, 2012 WL 6737766, at *8 (E.D. Mich. Nov. 19, 2012); *Soc. Sec. Rul.* 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record"). As the Sixth Circuit has explained, the purpose of this procedural requirement is two-fold:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotations and citations omitted).

In this case, as set forth above, Dr. Kovan completed a Medical Source Statement on October 4, 2011, opining, in relevant part, that Nagy is limited to lifting 20 pounds occasionally and less than 10 pounds frequently; cannot work a full 8-hour work day (because he is limited to standing/walking less than 2 hours in an 8-hour work day and sitting less than 6 hours in an 8-hour work day); cannot push or pull with the upper and lower extremities; and should never

11

climb, balance, kneel, crouch, crawl, or stoop. (Tr. 473-76). The ALJ considered Dr. Kovan's opinion, saying:

> In [his opinion], Dr. Kovan did set forth substantial sitting, standing, and walking restrictions (a total of less than eight hours a day), but it is significant that he only limited the claimant to occasional lifting and carrying to 20 pounds. That conclusion is actually consistent with an element of light work. The undersigned recognizes that Dr. Kovan precluded all postural activities in [his opinion]. However, he has not provided rationale for such conclusions. In fact, he has not provided rationale for a sitting restriction of less than six of eight hours. Dr. Kovan's bare restrictions in [his opinion] are not very persuasive, considering the lack of rationale for those restrictions. This is particularly true when the record establishes improvement after insertion of the spinal stimulator.

(Tr. 19). In other words, then, the ALJ rejected Dr. Kovan's opinion because he did not provide a "rationale" for his conclusions, and because his opinion was at odds with the record, which purportedly evidences "improvement after insertion of the spinal stimulator." (*Id.*). The problem, however, is that neither of these reasons is supported by substantial evidence.

As an initial matter, Dr. Kovan <u>did</u> provide a "rationale" for his opinion – namely, Nagy's positive disc herniation. (Tr. 474). The existence of this disc herniation is borne out in both Dr. Kovan's own treatment records and in imaging studies from the relevant time period. For example, in February of 2011, Dr. Kovan noted that Nagy had "neural foraminal irritation of the nerve with a disc protrusion on the left, which correlates with his L5-S1 radicular pain." (Tr. 375). And, multiple diagnostic studies either evidence this protrusion (Tr. 378, 453-54, 523) or cannot rule it out (Tr. 376). Thus, contrary to the ALJ's finding, Dr. Nagy did provide a "rationale" for his opinion, and that rationale is supported by substantial evidence.

The ALJ also discounted Dr. Kovan's opinion because the record showed "improvement after insertion of the spinal stimulator." (Tr. 19). As an initial matter, the fact that Nagy's condition might have "improved" after this procedure "does not by itself support the conclusion

12

that he did not continue to experience significant pain." *Miller v. Comm'r of Soc. Sec.*, 2014 WL 5511952, at *7 (E.D. Mich. Oct. 31, 2014). More significantly, however, the ALJ's finding in this respect is not a fair characterization of the relevant evidence. In support of her conclusion, the ALJ cites a single treatment note – from a visit just <u>two days after the spinal cord stimulator was implanted</u> – at which time Nagy reported "an 80-85% improvement in his pain with spinal cord stimulator trial." (Tr. 19, 531). However, the ALJ ignores the remainder of the record evidence, which demonstrates that Nagy's back pain continued after this device was implanted. For example, at his next visit to the pain clinic, on May 7, 2012, Nagy reported ongoing pain (8/10 on the pain scale), which was aggravated with bending. (Tr. 530). By July of 2012, Nagy was reporting that the stimulator was "not controlling his pain as it [had] been in the past," and he also reported experiencing numbness, tingling, and weakness in his back, which is aggravated by movement. (Tr. 528). Thus, the purported "good reasons" articulated by the ALJ for discounting Dr. Kovan's opinion are not supported by substantial evidence.

      2.  *The ALJ's Credibility Finding is Not Supported by Substantial Evidence*

Nagy also argues in his motion for summary judgment that the ALJ erred in evaluating his credibility.[4] (Doc. #11 at 8-9). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant is invaluable, and should not be discarded lightly." *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (internal quotations omitted); *see also Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008). This Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Nagy] are

---

[4] Indeed, in its 2013 order remanding this case to the ALJ for a second administrative hearing, the Appeals Council specifically noted that, in her first decision, the ALJ assessed "few credibility factors." (Tr. 98). Thus, the ALJ was specifically directed to more thoroughly consider the credibility of Nagy's allegations of disability. (*Id.*).

reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged …." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). Here, the ALJ made this finding, concluding that Nagy's impairments could reasonably be expected to cause the alleged symptoms. (Tr. 20).

After making such a finding, the ALJ must then "consider the entire case record" to evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which these symptoms affect the individual's ability to do basic work activities. *Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529(c). A non-exhaustive list of factors to be considered by the ALJ includes: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, the individual has received; (6) any measures the individual uses to relieve his or pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. §404.1529(c). In her written decision, the ALJ must "provide a sufficiently specific explanation for [her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (internal citations omitted); *see also Winhoven v. Comm'r of Soc. Sec.*, 2013 WL 4483463, at

\*12 (E.D. Mich. Aug. 19, 2013) ("[T]his Court does not sit to rubber stamp [an ALJ's credibility] assessment; instead, it has the responsibility of determining whether substantial evidence supports it."). In this case, a careful reading of the ALJ's decision reveals that the reasons articulated for discounting Nagy's credibility are not supported by substantial evidence. Moreover, the ALJ failed to consider other evidence that appears to bolster the credibility of Nagy's allegations of disability.

First, the ALJ found that Nagy's continued smoking "detracts from his credibility," noting that he "smokes up to one and one-half pack of cigarettes a day" against medical advice. (Tr. 18). While there certainly is evidence in the record that Nagy was advised to stop smoking, there is also evidence that he has made the effort to do so, albeit not entirely successfully. (Tr. 569 ("[Nagy] quit smoking for a while. He has restarted again, about two or three cigarettes per day now [in December of 2013].")). Moreover, it is not clear how, if at all, Nagy's failure to quit smoking makes his allegations of disabling back pain less credible.[5]

The ALJ also discounts Nagy's credibility because he "alleges drowsiness from medication, but he is not too drowsy to drive." (Tr. 18). As Nagy points out, however, the fact that he can drive his wife to and from work approximately one mile each way does not necessarily undercut his testimony that his medications cause drowsiness. (Tr. 35, 57).

Lastly, the ALJ discounts Nagy's credibility because he and his wife purportedly "testified that [his] back impairment has improved" and that "a spinal stimulator has provided the improvement." (Tr. 18). In reality, however, Nagy testified that the spine stimulator "takes

---

[5] It is unclear whether the ALJ believed that this issue negatively impacted Nagy's overall credibility, or whether he believed it called into question only the extent of Nagy's "pulmonary impairment." (Tr. 18). Even if the ALJ intended only the latter, for the reasons discussed below, the Court would still reach the same ultimate conclusion as to the ALJ's overall credibility analysis.

15

away some of the pain, but it doesn't take away all the pain," and that it merely "makes life bearable." (Tr. 39, 41). Indeed, he continues to take both Vicodin and Valium for pain, despite the fact that the spinal cord stimulator is on "24/7." (Tr. 39, 600-01). And, his wife testified that, from her perspective, ever since Nagy reinjured his back in December of 2010, he was "getting worse, and worse, and worse and worse." (Tr. 43).

The ALJ also failed to consider several other factors that weigh in Nagy's favor. For example, as to daily activities, both Nagy and his wife testified that he does little other than watch television and nap during the day. (Tr. 35, 43-44). When asked what Nagy's life is like now, his wife testified:

> There is none. He stays at home. He sleeps for an hour, gets up, he goes back to bed for a half-an-hour, he gets up, stays up for a couple hours, takes another hour nap. It's just he don't do nothing. We haven't been on vacation. He can't go nowhere. He can't do nothing.

(Tr. 43-44). The limited extent of Nagy's daily activities should have been considered by the ALJ in assessing his credibility. *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529(c).

The ALJ also failed to consider the treatment, other than medication, Nagy received, as contemplated in 20 C.F.R. §404.1529(c), in evaluating his credibility. The evidence establishes that Nagy has persistently made efforts to obtain relief of his back pain: he has undergone multiple surgical procedures, physical therapy (which only served to exacerbate his pain), epidural injections (which provided little relief), and, finally, implantation of a spinal cord stimulator. As this Court has previously recognized, "Plaintiff's willingness to repeatedly endure aggressive medical treatment and his continued use of narcotic pain medication strongly supports his allegations of ongoing pain." *Miller*, 2014 WL 5511952, at *8.

Finally, the ALJ failed to consider Nagy's exemplary work history: this is an individual

16

who worked as a kiln operator for the same company for more than 20 years, even returning to work after his first back surgery in 2009. This fact too should have been considered by the ALJ when assessing the credibility of Nagy's allegations. *See, e.g., White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (finding that the plaintiff's "extensive work history and As this Court has recognized, where "the ALJ's selective reliance on 'fragments' of the record amounts to a distortion of the record it cannot be said that substantial evidence supports the credibility determination." *Peltier v. Comm'r of Soc. Sec.*, 2014 WL 7272760, at *9 (E.D. Mich. Dec. 18, 2014) (quoting *Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000)). For all of these reasons, the ALJ's decision to discount Nagy's credibility is not supported by substantial evidence, and remand is required for this reason too. *See, e.g., Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) ("In sum, while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence."); *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 4669997, at *11 (E.D. Mich. Aug. 30, 2013) (remanding where the ALJ's credibility determination was not supported by substantial evidence).

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[13]** be **DENIED**, Nagy's Motion **[11]** be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to 42 U.S.C. §405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: November 8, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

17

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 8, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
